## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MATTHEW WIGGINS,

   Plaintiff,

  v.            Civ. No. 11-967 KG/KK

DEANNA HOISINGTON *et al.*,

   Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 71), filed July 25, 2014, and Defendants' *Martinez* Report and Motion for Summary Judgment (Doc. 87), filed October 20, 2014.  By an Order of Reference (Doc. 98), filed January 15, 2015, this matter was referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case.  The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, concludes that Plaintiff's motion for summary judgment is not well taken, and recommends that it be DENIED.  The Court further concludes that Defendants' motion for summary judgment is not well taken, and recommends that it be DENIED as well.

## I.  Introduction

This case arises out of Plaintiff's incarceration at the Western New Mexico Correctional Facility ("WNMCF") from March to November 2011.  (Docs. 1, 7, 10, 11.)  While the majority of Plaintiff's claims have been dismissed, two claims remain:  (1) Plaintiff's First Amendment claims against Defendants Hoisington, Robinson, and Roark regarding Defendants' alleged refusal to provide Plaintiff with a halal diet while he was incarcerated at WNMCF; and, (2)

Plaintiff's claims for declaratory and injunctive relief against Defendant Roark under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"),. (Docs. 57, 59, 73, 74, 76.) Since November 15, 2011, Plaintiff has been incarcerated at the Penitentiary of New Mexico. (Doc. 57 at 2.)  This matter is currently before the Court on the parties' cross-motions for summary judgment.

### II.  Legal Standards for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges specific facts based on the prisoner's personal knowledge and has been sworn under penalty of perjury.  *Hall v. Bellmon*, 935 F.2d 1106, 1111

(10th Cir. 1991).  "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Id.*  However, "it is not the proper function of the district court to assume the role of advocate for the *pro se* litigant."  *Id.*

When reviewing a motion for summary judgment, the Court must keep in mind three principles.  First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue of material fact exists, requiring a trial.  *Anderson*, 477 U.S. at 249. Second, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  *Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999).  Finally, the Court cannot decide issues of credibility. *Anderson*, 477 U.S. at 255.  "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor."  *Id*. at 257.

### III.  Procedural History

Plaintiff filed this lawsuit on October 28, 2011, and amended his complaint three times, on December 2, 2011, January 24, 2012, and January 31, 2012.  (Doc. 57 at 1; *see also* Docs. 1, 7, 10, 11.)  The Court has entered a number of previous orders, including an order denying a preliminary injunction (Doc. 50), two orders disposing of various claims on the pleadings (Docs. 73, 74), and an order for Defendants to file a *Martinez* report.  (Doc. 76.)  Plaintiff filed a motion for summary judgment on July 25, 2014, and this motion is fully briefed.  (Docs. 71, 75, 81.) Likewise, in their *Martinez* report filed on October 20, 2014, Defendants incorporated a motion for summary judgment, and this motion is also fully briefed.  (Docs. 87, 90, 92, 93.)  The Court will consider the parties' cross-motions for summary judgment in light of the foregoing standards and procedural history.

## IV.  Analysis

**A.      Plaintiff's First Amendment Claims**

The Court will first consider the parties' motions for summary judgment as to Plaintiff's First Amendment claims against Defendants Hoisington, Robinson, and Roark, based on these Defendants' alleged refusal to provide Plaintiff with a halal diet while he was incarcerated at WNMCF from March to November 2011.  Plaintiff's motion for summary judgment is relatively brief and does not specifically discuss on which claims he is seeking summary judgment or why he is entitled to it.  (*See* Doc. 71 at 1-3.)  The Court will construe Plaintiff's *pro se* motion broadly to argue that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law on his First Amendment claims.  Defendants, in their motion, argue that they are entitled to summary judgment on Plaintiff's First Amendment claims because:  (1) they did not refuse Plaintiff a halal diet; (2) their actions were logically connected to legitimate penological interests; (3) they provided Plaintiff with alternative means of exercising his religion; (4) accommodating Plaintiff's request would have threatened safety and security at WNMCF; (5) Defendants did not personally participate in the alleged constitutional violations; (6) Defendants are entitled to qualified immunity; and, (7) Plaintiff's factual allegations are vague and conclusory.  (Doc. 87 at 10-20.)

1.      <u>Legal Standards Governing Plaintiff's First Amendment Claims</u>

"It is well-settled that inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  "Yet such protections are not without reasonable limitations . . . justified by the considerations underlying our penal system." *Id.*  Thus, "when a prison regulation impinges on

inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999); *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004); *Beerheide v. Suthers*, 286 F.3d 1179, 1184 (10th Cir. 2002). These principles have led to a "two-step inquiry" for analyzing a prisoner's free exercise claim. *Kay*, 500 F.3d at 1218. "First, the prisoner-plaintiff must…show that a prison regulation substantially burdened sincerely-held religious beliefs." *Id.* In this regard, the Tenth Circuit "recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide*, 286 F.3d at 1185. "Second, prison officials may identify the legitimate penological interests that justified the impinging conduct."[1] *Id.*

2.   Plaintiff's Motion for Summary Judgment on his First Amendment Claims

The Court will first consider whether Plaintiff has established that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law on his First Amendment claims. When considering an inmate's free exercise claim, "[a]s a threshold matter, a court must . . . determine whether the inmate's belief is sincerely held and religious in nature." *Searles*, 393 F.3d at 1131. "[T]he guarantee of the Free Exercise Clause…is not limited to beliefs which are shared by all of the members of a religious sect." *Holt v. Hobbs*, 135 S. Ct. 853, 862-63 (2015). "Instead, [a] plaintiff is entitled to invoke First Amendment protection if his religious beliefs are sincerely held." *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991). Thus, "a prisoner's belief in religious dietary practices is constitutionally protected if the belief is genuine and sincere, even if such dietary practices are not doctrinally required by the prisoner's religion." *Kay*, 500 F.3d at 1220; *see Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314 (10th Cir. 2010) ("[T]he issue is not whether the lack of a halal diet that includes meats substantially

---

[1] If prison officials succeed in justifying their actions, "[t]he burden then returns to the prisoner to show that these articulated concerns were irrational." *Kay*, 500 F.3d at 1218 n.2.

burdens the religious exercise of any Muslim practitioner, but whether it substantially burdens *Mr. Abdulhaseeb's* own exercise of his sincerely held religious beliefs.") (emphasis in original). "The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment and therefore the issue of sincerity can rarely be determined on summary judgment." *Kay*, 500 F.3d at 1219.

Viewed in the light most favorable to Defendants, the non-movants, there are genuine issues of material fact regarding the nature of Plaintiff's dietary beliefs.  In general, Plaintiff claims to seek a "halal" diet.  (*See*, *e.g.*, Doc. 87-2 at 13.)  However, as noted above, Plaintiff's own sincerely held religious beliefs must determine of what such a diet consists.  *Kay*, 500 F.3d at 1220.  During his time at WNMCF, and over the years this lawsuit has been pending, Plaintiff has generated a considerable paper record regarding what "halal" diet conforms to his religious beliefs, and this record has not always been consistent or clear.

In his original request for a religious diet at WNMCF, submitted on March 16, 2011, Plaintiff listed as prohibited foods "dead meat and blood and flesh of swine and that on w[h]ich any other name hath been invoked besides that of Alla[]h."  (Doc. 87-2 at 24.)  Then, in a letter to Defendant Hoisington on April 11, 2011, Plaintiff complained that he was not receiving bread, and stated that "kosher is just a sub[stitute] for halal which is the Islamic diet."  (*Id.* at 20.) Plaintiff in this letter referred Defendant Hoisington to Abdul Rauf Campos-Marquetti, Prison Program Coordinator for the Islamic Center of New Mexico, as the authority to be consulted regarding halal dietary issues.  (*Id.*)  An attached letter from Mr. Campos-Marquetti, in turn, lists "three optional diets . . . that would be permissible under an Islamic religious diet," including a vegetarian diet, the substitution of fish for non-halal meats, or "[t]he provision of a 'True Kosher' meat diet in accordance with Jewish law."  (*Id.* at 22.)  Thereafter, on April 24, 2011,

6

Plaintiff rejected kosher as a permissible substitute for halal, and requested a halal diet in lieu of the kosher diet he was receiving.  (*Id.* at 8.)  On the same date, Plaintiff submitted a letter to Defendant Robinson listing a number of acceptable foods and stating that Islam forbids processed meats.  (Doc. 87-9 at 1-6.)  On August 21, 2011, Plaintiff submitted another letter to Defendant Robinson stating that all of his meals were "sup[posed] to have bread [and] jelly[:]  4 pi[e]ces of bread [and] t[w]o packs of jelly."  (Doc. 87-8 at 25.)

Before it can reach the question of whether Plaintiff's dietary beliefs are sincerely held and religious in nature, the Court must be able to determine what those beliefs actually are.  In the present matter, Plaintiff's various and potentially inconsistent dietary requests create genuine issues of material fact regarding this preliminary issue.[2]  In these circumstances, the Court cannot find that, as a matter of law, it is beyond dispute that all of Plaintiff's professed beliefs regarding his diet are "religious in nature and sincerely held."[3]  *Searles*, 393 F.3d at 1131.  On the contrary, this is "a credibility assessment" not to be determined on summary judgment.  *Kay*, 500 F.3d at 1219.  Plaintiff's summary judgment motion on his First Amendment claims should be denied on this basis.

The Court notes that, to be entitled to summary judgment on his First Amendment claims, Plaintiff must also establish that there is no factual dispute regarding whether Defendants substantially burdened his religious beliefs.  To show a substantial burden, Plaintiff must prove

---

[2] Plaintiff's pleadings in this case at times add to the confusion.  Thus, for example, in a Memorandum of Law filed on March 8, 2013, Plaintiff changed his apparent position regarding kosher meals, stating that "meat slaughtered by the Jews and Christians is halal" and requesting that Defendants be required to provide him with "kosher meals." (Doc. 18 at 1.)

[3] In their summary judgment motion, Defendants "concede that Plaintiff's Islamic beliefs are sincere." (Doc. 87 at 17.)  However, this concession appears to be limited to the simple fact that Plaintiff is sincerely Muslim. Defendants certainly do not concede that all of Plaintiff's dietary requests are based on sincerely held religious beliefs.  For example, Defendants assert that "[w]ithout doubt Plaintiff will continue complaining about his meals under the guise that the menus violate his religion regardless of whether he is provided with halal certified meats, kosher prepared meats and food, a vegetarian diet, food from the main menu or a combination of the above."  (Doc. 92 at 5.)  According to Defendants, Plaintiff's dietary requests are "a moving target" based on his "specific likes and tastes." (*Id.*)

"deliberate" or "repeated" violations of his right to a religious diet conforming to his beliefs. *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009); *see, e.g.*, *Malipurathu v. Johnson*, 2014 WL 1883890 at *7 (N.D. Okla. 2014) (plaintiff who alleged he was receiving only three to four halal meals per week, and that halal menu included non-halal items, alleged "more than isolated or sporadic incidents of not receiving a halal meal" and therefore a substantial burden on his free exercise rights).

There are also genuine issues of material fact regarding whether Defendants have deliberately or repeatedly denied Plaintiff a diet conforming to his religious beliefs.  Plaintiff's lack of clarity and consistency regarding what he considered to be an acceptable halal diet or halal substitute at any given time makes it impossible to determine as a matter of law how often Plaintiff was or was not provided with a diet conforming to his religious beliefs.  The evidence submitted by the parties indicates that, for most of the time he was at WNMCF, Plaintiff received a diet consisting of vegetarian foods and a "pre-packaged kosher meal."[4]  (Doc. 87-8 at 3 ¶ 12, 27-28.)  This diet may have comported with Plaintiff's religious dietary beliefs, (Doc. 87-2 at 20, 22), or it may not have (Doc. 87-2 at 8; Doc. 87-9 at 1-6.)  Because Plaintiff has not demonstrated the absence of any genuine issues of material fact regarding whether Defendants substantially burdened his sincerely held religious beliefs by deliberately or repeatedly refusing to provide him with a diet conforming to those beliefs, he is not entitled to summary judgment on his First Amendment claims.  For the above reasons, the Court recommends denial of Plaintiff's motion for summary judgment on his First Amendment claims against Defendants.

---

[4] Evidence before the Court suggests that at some point after September 20, 2011, the New Mexico Department of Corrections ("NMDOC") ceased to provide pre-packaged kosher meals to Jewish and Muslim inmates because "[t]he diet served on the main menu meets the dietary restrictions of these faith groups."  (Doc. 71 at 16.)  However, it is unclear whether this occurred before or after Plaintiff left WNMCF, because the food service provider was to continue to serve pre-packaged kosher meals until the provider "depleted [its] supply."  (*Id.*)

3.      <u>Defendants' Motion for Summary Judgment on Plaintiff's First Amendment</u>
<u>Claims</u>

The Court must review Defendants' motion for summary judgment on Plaintiff's First Amendment claims according to the same legal standards as those governing Plaintiff's motion, but must reverse its perspective, viewing the evidence and drawing all reasonable inferences in favor of Plaintiff, the non-movant.   The Court will consider each of Defendants' arguments in opposition to Plaintiff's First Amendment claims in turn.

a.      *Did Defendants deny Plaintiff a diet conforming to his religious beliefs?*

Defendants first argue that they are entitled to summary judgment on Plaintiff's First Amendment claims because they did not deny Plaintiff a halal diet.   (Doc. 87 at 10.) Specifically, they claim that they provided Plaintiff with vegetarian food items and a pre-packaged kosher meat entrée, and that this diet was "halal" because it was more restrictive than the diet Plaintiff requested. (*Id.* at 10-12.)   In making this argument, Defendants appear to misunderstand Tenth Circuit law regarding what the First Amendment requires.   As discussed in Section IV.A.2., *supra*, the First Amendment requires, not a halal diet as determined by Defendants or a religious authority, but a halal diet conforming to Plaintiff's sincerely held religious beliefs.  *Kay*, 500 F.3d at 1220.  A diet that is "more restrictive" is not necessarily a diet conforming to an inmate's sincerely held religious beliefs.  For example, in *Abdulhaseeb*, the Tenth Circuit determined that the plaintiff had a right to a diet including halal meats, even though a more restrictive vegetarian diet could be halal for some Muslims.  600 F.3d at 1314. Again, "the issue is not whether the lack of halal diet that includes meats substantially burdens the religious exercise of any Muslim practitioner, but whether it substantially burdens *[the plaintiff's]* own exercise of his sincerely held religious beliefs."  *Id.* (emphasis in original).

9

In the present matter, as previously noted, the record contains inconsistent evidence regarding what diet Plaintiff's sincerely held religious beliefs require.  However, viewing this evidence in the light most favorable to Plaintiff and drawing all rational inferences in his favor, a reasonable fact finder could conclude that Plaintiff sincerely believes that a halal diet includes non-processed meats, and that Defendants refused to provide such a diet.  In some of his written communications to Defendants, Plaintiff stated that Islam forbids the consumption of processed meats, and listed examples of meats to be included in his diet.  (Doc. 87-9 at 1-6.)  Such a belief, while perhaps not the belief of every observant Muslim, is not "without any basis whatsoever in the creed or community on which [Plaintiff] purports to rest [his] claim." *Abdulhaseeb*, 600 F.3d at 1314; *see id.* at 1313 ("Food containing gelatin, enzymes, and emulsifiers are questionable because of their unclear origins; they may be halal or haram.").  Thus, a reasonable fact finder could determine that Plaintiff sincerely believes that Islam requires him to eat non-processed meats.

Then, Defendants have failed to demonstrate the absence of any genuine issues of material fact regarding whether they provided Plaintiff with a diet including non-processed meats.  By arguing that they provided Plaintiff with a diet conforming to his religious beliefs, Defendants imply that the pre-packaged kosher entrées Plaintiff received contained only non-processed meats.  (*See*, *e.g.*, Doc. 87 at 12.)  However, on a motion for summary judgment, the Court cannot simply accept an implication as true.  There is no question that some kosher meats are processed, for example, the kosher hot dog; and, Defendants have offered no evidence that the kosher entrées they provided to Plaintiff were in fact free of processed meats.  Instead, they have simply provided a generic kosher menu that lists various vegetarian foods and a "pre-

packaged kosher meal," the contents of which are unknown.[5]  (Doc. 87-8 at 28.).  In these circumstances, Defendants have failed to show the absence of genuine issues of material fact regarding whether they denied Plaintiff a halal diet conforming to his sincerely held religious beliefs, *i.e.* a diet including non-processed meats.  Defendants' argument that they are entitled to judgment as a matter of law on this issue is therefore without merit.

> **b.**     *Were Defendants' actions reasonably related to legitimate penological interests?*

Defendants next argue that they are entitled to summary judgment because their refusal to provide Plaintiff with halal meals was reasonably related to legitimate penological interests. (Doc. 87 at 12-16.)

> [T]o balance the guarantees of the Constitution with the legitimate concerns of prison administrators . . . a court [must] determine:  (1) whether a rational connection exists between the prison policy [or] regulation and a legitimate government interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and[,] (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide*, 286 F.3d at 1185; *Searles*, 393 F.3d at 1131; *Makin*, 183 F.3d at 1209.  The Court must balance all of these factors to determine whether an alleged burden on an inmate's constitutional rights is reasonably related to legitimate penological interests, *Makin*, 183 F.3d at 1209; and, on summary judgment the Court must do so viewing the evidence and drawing all reasonable inferences in Plaintiff's favor.

---

[5] Plaintiff attached the declaration of inmate Celso Stephens to his motion for summary judgment, in which Mr. Stephens declared under penalty of perjury that he personally saw Plaintiff being made to eat foods that are not halal, including "hot dogs" and "processed foods."  (Doc. 71 at 14.)  However, it is unclear precisely when Mr. Stephens witnessed this; Mr. Stephens' declaration is undated and referred to no dates more precise than "the last four (4) years."  (*Id.*)

**Rational connection between policy and legitimate government interest**

"To satisfy [the first] prong of the test, the prison administration is required to make a minimal showing that a rational relationship exists between its policy and stated goals." *Beerheide*, 286 F.3d at 1186.   Here, Defendants argue that, by providing Plaintiff with a standard kosher diet, they were "meeting the recommendations of the Islamic Prison Program Coordinator for Muslim [i]nmates," "meeting the dietary requirements of all adult inmates," and "streamlining the religious diet to meet the needs of Islamic and Jewish inmates."  (Doc. 87 at 13.).   Defendants also assert that they were "avoiding a perception of favoritism, which could have a negative impact on the rest of the prison population at WNMCF and create security and safety risks for WNMCF personnel."  (*Id.* at 14.)  The Tenth Circuit acknowledged the rational relationship between similar goals and prison officials' denial of a kosher diet to Jewish inmates in *Beerheide*, 286 F.3d at 1186.  This factor, which requires only a "minimal showing," *id.*, therefore weighs in Defendants' favor.

**Alternative means of exercising rights**

The Court must next consider whether Defendants provided Plaintiff with alternative means of exercising his religious beliefs.  The Tenth Circuit has consistently found this factor to weigh against prison officials who have refused to provide an inmate with a diet conforming to his religious beliefs.  "It is one thing to curtail various ways of expressing belief, for which alternative ways of expressing belief may be found.  It is another thing to require a believer to defile himself, according to the believer's conscience, by doing something that is completely forbidden by the believer's religion."  *Beerheide*, 286 F.3d at 1192 (quoting *Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993)); *see Hammons v. Saffle,* 348 F.3d 1250, 1255-56 (10th Cir. 2003) (banning in-cell use of Muslim prayer oils was "not comparable in gravity to the *Beerheide*

D[epartment of Correction]'s forcing inmates to eat food that they believed imperiled their souls because it violated a religious mandate that they not pollute their bodies with non-kosher food"). In the present matter, genuine issues of material fact exist as to whether Defendants required Plaintiff to eat food that he believed imperiled his soul, specifically, processed meats.  (*See* Section IV.A.3.a., *supra*.)  This factor therefore weighs in Plaintiff's favor.

### Impact on personnel, prisoners, safety and security at WNMCF

The court must also consider "what effect accommodating the exercise of the [Plaintiff's] right would have on guards, other prisoners, and prison resources generally." *Beerheide*, 286 F.3d at 1189.  At this stage, "prison officials must present credible evidence to support their stated penological goals." *Id.*  As noted above, Defendants *argue* that they needed to "streamline" the provision of religious diets to Muslim and Jewish inmates, and that accommodating Plaintiff's dietary religious beliefs would have caused security and safety risks for WNMCF personnel and prisoners by creating a perception of favoritism.  (Doc. 87 at 13-14.) In their reply, Defendants further contend that "it is simply impossible to create one special meal that meets the specific likes and tastes of one inmate," and that they "must have pre-planned menus to accommodate the . . . diets of numerous inmates."[6]  (Doc. 92 at 5.)  However, Defendants have presented no evidence at all to support these arguments.  "[P]rison officials must . . . make their case by presenting evidence, however minimal that evidence might be." *Id.* at 1191.  Defendants have failed to demonstrate anything, much less the absence of any genuine issues of material fact, regarding this factor, which therefore weighs in Plaintiff's favor.[7]

---

[6] Defendants also suggest, although they do not directly argue, that Plaintiff's dietary requests were impossible to accommodate because they frequently changed.  (*See* Doc. 92 at 4, 5.)

[7] The Court does not mean to indicate that Defendants' arguments are inherently unsound, or that Defendants would be unable to support them with credible evidence at trial.  Rather, the Court simply notes that Defendants have offered no such evidence at this stage of the proceedings, and that some "evidence, however minimal" would be necessary to find that this factor weighs in their favor as a matter of law. *Beerheide*, 286 F.3d at 1191.

**Ready, easy-to-implement alternatives to accommodate right**

Finally, the Court must consider whether there are ready, easy-to-implement alternatives that would accommodate Plaintiff's constitutional rights. *Beerheide*, 286 F.3d at 1185. "[T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 1191. However, "[p]rison officials need not demonstrate [that] they have considered or tried all other methods of dealing with the issue before courts will be satisfied with the prison's resolution." *Id.* at 1192. In the present matter, a reasonable fact finder could determine that there was an obvious, easy alternative available to Defendants to accommodate Plaintiff's religious beliefs, indeed an alternative Defendants briefly implemented. Specifically, for three days in October 2014, Defendants provided Plaintiff with an otherwise vegetarian diet including non-processed meats. (Doc. 92-1 ¶ 8.) Defendants do not argue, much less prove, that they discontinued this diet because it was not "ready," "obvious," or "easy to implement."[8] This factor therefore weighs in Plaintiff's favor.

Considering all four of the factors listed in *Beerheide*, although Defendants have minimally proffered a legitimate governmental interest rationally related to their refusal to accommodate Plaintiff's religious dietary beliefs, they have provided no evidence regarding the impact such accommodation would have on personnel, prisoners, safety, and security at WNMCF. Moreover, viewed in the light most favorable to Plaintiff, there are genuine issues of material fact regarding whether Defendants' actions required Plaintiff to defile himself by eating food his religious beliefs forbid, and whether there was a ready, easy-to-implement alternative available to accommodate those beliefs. In these circumstances, there remain genuine issues of

---

[8] Rather, Defendants claim that they discontinued this diet to begin providing Plaintiff with pre-packaged halal-certified meat entrées. (Doc. 92-1 ¶ 8.) Plaintiff appears to dispute this claim. (Doc. 90 at 3.)

material fact regarding whether Defendants' actions were reasonably related to legitimate penological interests, and Defendants are not entitled to summary judgment on this basis.

> c.   *Did each Defendant personally participate in the alleged constitutional violation?*

Defendants next argue that they are entitled to summary judgment because they did not personally participate in or cause the alleged violation of Plaintiff's First Amendment rights. (Doc. 87 at 18-20.)

> Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.   Supervisory status alone does not create § 1983 liability.   Rather, there must be an affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.

*Gallagher*, 587 F.3d at 1069.   The Court will consider each Defendant's involvement in the alleged violation of Plaintiff's First Amendment rights in turn.

### Defendant Roark

Defendant Roark argues that he is entitled to summary judgment because his only involvement in the alleged constitutional violation was to deny Plaintiff's August 29, 2011 grievance, in which Plaintiff complained about receiving a kosher rather than a halal diet.   (Doc. 87 at 19; Doc. 87-2 at 1.)   According to Defendant Roark, "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983."   *Gallagher*, 587 F.3d at 1069.   However, viewing the evidence and drawing all rational inferences in Plaintiff's favor, a reasonable fact finder could determine that Defendant Roark exercised control or direction over the deprivation of Plaintiff's First Amendment rights.   Defendant Roark was in 2011 the Deputy Director of Adult Prisons.   (Doc. 87 at 19.)   There is evidence suggesting that, in this capacity, Defendant Roark made policy decisions regarding what religious diets, if any, inmates at NMDOC facilities,

15

including WNMCF, received.  Specifically, on September 20, 2011, Defendant Roark informed all NMDOC facility wardens that NMDOC's food service provider "will no longer be ordering halal and kosher diets.  The diet served on the main menu meets the dietary restrictions of these faith groups."  (Doc. 71 at 16.)  There appears to be no dispute that, before this directive, NMDOC's policy was to provide Muslim inmates with kosher diets; and, a reasonable fact finder could infer that Defendant Roark, as the Deputy Director of Adult Prisons, was responsible for this policy as well.  (*See*, *e.g.*, Doc. 87 at 12; 87-8 at 1-3 ¶¶ 7, 10; 87-8 at 27-28.)  This evidence demonstrates a genuine issue of material fact regarding whether Defendant Roark personally participated in or caused the violation of Plaintiff's constitutional rights, *i.e.*, the denial of a halal diet conforming to his religious beliefs.

### Defendant Robinson

Defendant Robinson argues that he is entitled to summary judgment because his only involvement in the alleged constitutional violation was "to ensure that Plaintiff was receiving the proper food items he was entitled to pursuant to his religious diet in accordance with the religious diet menu."  (Doc. 87 at 19-20.)  Defendant Robinson was, at all relevant times, the chaplain at WNMCF.  (Doc. 87-8 at 1 ¶ 1.)  Defendants claim that "the specific complaint brought to the attention of [Defendant] Robinson was … about not receiving bread at every meal or not receiving what [Plaintiff] was supposed to receive."  (*Id.* at 19.)  However, Defendants admit that Plaintiff also requested a halal diet from Defendant Robinson more than once, and provided Defendant Robinson with "a list of what he considers to be halal approved food items," including "any meat (it did not have to be halal or kosher certified), as long as it was not processed."  (*Id.* at 20.)

Defendant Robinson's own arguments suggest that there are genuine issues of material fact regarding whether he personally participated in deciding what religious diet Plaintiff would receive, and a review of the record evidence confirms this.  NMDOC Policy CD-101401, entitled "Religious Diets; Procedures," states that inmates' religious diet requests are forwarded to "the Chaplain," who in turn forwards "approved requests" to Food Service to "provide an appropriate religious diet."  (Doc. 87-4 at 5.)

> If a determination is made that extraordinary accommodations may be necessary, the request will be forwarded for review by the Chaplain and the Food Service provider, who will jointly research the request and consult qualified faith group representatives in the community, as necessary, for assistance in designing an appropriate plan of action.

(*Id.*)  Defendant Robinson approved Plaintiff's request for a "Kosher/Halal meal" on March 21, 2011.  (Doc. 87-8 at 5, 7.)  Thereafter, Plaintiff submitted at least one written request to Defendant Robinson for a diet including non-processed meats.  (Doc. 87-9 at 1-6.)  To the extent that Defendant Robinson could not simply approve this request because it required "extraordinary accommodations," Defendant Robinson had the obligation to research it and design a plan of action in response.  (Doc. 87-4 at 5.)  There is no evidence that he did so.  In other words, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Defendant Robinson was directly responsible for deciding whether Plaintiff received the religious diet he requested, and he received Plaintiff's request for a halal diet conforming to his religious  beliefs, but declined to research or authorize it.  As such, there are genuine issues of material fact regarding whether Defendant Robinson personally participated in or caused the violation of Plaintiff's constitutional rights.

**Defendant Hoisington**

Finally, Defendant Hoisington argues that she is entitled to summary judgment because "[t]he specific complaint Plaintiff brought to [her] attention . . . was an allegation that he was not receiving bread or jelly with his kosher meal." (Doc. 87 at 19.) In 2011, Defendant Hoisington was the interim warden of WNMCF. (Doc. 87-8 at 23.) The record evidence does indicate that Plaintiff asked Defendant Hoisington to ensure that he received bread and jelly with his meals. (Doc. 87-2 at 18-21; Doc. 87-8 at 23; Doc. 90-1 at 17 ¶ 9.) However, viewing the evidence in the light most favorable to Plaintiff, and drawing all rational inferences in his favor, a reasonable fact finder could also conclude that Defendant Hoisington received notice of Plaintiff's requests for a halal diet including non-processed meats, had a responsibility to act on them, and failed to do so.

In his original complaint, which was verified under penalty of perjury, Plaintiff attested that he spoke to Defendant Hoisington on or about May 5, 2011 and "asked her if [she] [could] do anything about [his] diet." (Doc. 1 at 9.) He also attested that he "wrote to [Defendant] Hoisington every step of the way about everything[. S]he stated at one time I was right and to let officers on duty know if anything was not sent [sic] in my religious diet." (Doc. 1 at 10.) Defendant Hoisington has failed to submit any testimony disputing Plaintiff's sworn statements. Plaintiff's uncontested testimony that he wrote to Defendant Hoisington "every step of the way about everything" raises a genuine issue of material fact regarding whether Plaintiff copied her on, or otherwise informed her of, his written requests to Defendant Robinson. The fact that Defendant Robinson copied Defendant Hoisington on his response to Plaintiff's August 12, 2011

written request certainly suggests this was the case.[9]  (*See*, *e.g.*, Doc. 87-8 at 27.)  In short, there are genuine issues of material fact regarding whether Defendant Hoisington received notice of Plaintiff's requests for a halal diet including non-processed meats.

If Defendant Hoisington did receive these requests, then by policy she had a responsibility to act on them.  NMDOC Policy CD-101400, entitled "Religious Diets; Policy," states in pertinent part that "[i]t is the responsibility of the warden/designee to ensure the procedures in this policy are consistently and fairly applied."  (Doc. 87-4 at 2.)  Also, as noted above, NMDOC Policy CD-101401 states with respect to religious diet requests that "[i]f a determination is made that extraordinary accommodations may be necessary, the request will be forwarded for review by the Chaplain and Food Service provider."  (*Id.* at 5.)  Thus, if Defendant Hoisington received Plaintiff's requests for a halal meal including non-processed meats, then she had the responsibility to determine if the requests required extraordinary accommodation, and if so to forward them to Defendant Robinson and the Food Service provider for review, research, consultation, and development of an action plan.  She also had the responsibility to ensure that Defendant Robinson and the Food Service provider responded to Plaintiff's requests consistently and fairly.

The record evidence demonstrates that Defendant Hoisington responded to Plaintiff's requests by informing him of when he would receive bread, and that he was not entitled to jelly.  (Doc. 87-2 at 18-19; Doc. 87-8 at 23.)  There is no evidence that Defendant Hoisington determined whether Plaintiff's requests required extraordinary accommodation, forwarded Plaintiff's requests to Defendant Robinson or the Food Service provider, or took any steps to

---

[9] It is also suggestive that Defendant Hoisington was the official who responded to Plaintiff's April 24, 2011 informal complaint that he wanted a halal diet and not a kosher diet, although this informal complaint did not mention non-processed meats or otherwise explain why a kosher diet did not conform to Plaintiff's religious beliefs. (Doc. 87-8 at 8-18, 23.)

ensure that Defendant Robinson and the Food Service provider responded to Plaintiff's requests fairly and consistently. In these circumstances, a reasonable fact finder could conclude that there was an affirmative link between the alleged violation of Plaintiff's constitutional rights and Defendant Hoisington's personal participation, exercise of control or direction, or failure to supervise. *Gallagher*, 587 F.3d at 1069. For all of the above reasons, the Court rejects Defendants' argument that they are entitled to summary judgment because they did not personally participate in the alleged violation of Plaintiff's constitutional rights.

> d.  *Are Defendants entitled to qualified immunity?*

Defendants next argue that they are entitled to summary judgment on Plaintiff's First Amendment claims based on qualified immunity. (Doc. 87 at 18.) "The doctrine of qualified immunity provides that when government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Makin*, 183 F.3d at 1209. In the Tenth Circuit, an inmate's First Amendment right to a diet conforming to his sincerely held religious beliefs has been clearly established since at least 2002, long before the events forming the basis of Plaintiff's complaints. *Beerheide*, 286 F.3d at 1185 ("This Circuit recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs."). Thus, Defendants are only entitled to qualified immunity if they can demonstrate the absence of any genuine issues of material fact regarding whether they violated this right as to Plaintiff. *See Handy v. Diggins*, 2013 WL 1302482 at *4 (D. Colo. 2013) ("[T]he inquiry is whether Defendants' actions in denying Plaintiff's request for a kosher meal violated Plaintiff's constitutional rights. I find that there is clearly established law on this issue.").

For the reasons set forth at length above, and viewing the evidence in the light most favorable to Plaintiff, a reasonable fact finder could determine that Defendants refused to provide Plaintiff with a diet conforming to his sincerely held religious beliefs, *i.e.*, a halal diet including non-processed meats.  Any reasonable prison official would have known that such conduct would violate Plaintiff's clearly established rights under the First Amendment.  Defendants are therefore not entitled to summary judgment on the basis of qualified immunity.

e.    *Are Plaintiff's allegations sufficiently specific to "raise a right to relief above the speculative level"?*

Finally, Defendants argue that Plaintiff's allegations in support of his First Amendment claims are vague and insufficiently specific to "raise a right to relief above the speculative level." (Doc. 87 at 20-21.)  The Court disagrees.  While not always clear or consistent, Plaintiff's allegations, combined with the record evidence before the Court, are sufficiently specific to establish genuine issues of material fact regarding whether Defendants violated Plaintiff's First Amendment right to a diet conforming to his religious beliefs, *i.e.*, a halal diet including non-processed meats.  For all of the above reasons, the Court recommends that Defendants' motion for summary judgment on Plaintiff's First Amendment claims be denied.

**B.    Plaintiff's RLUIPA Claims**

Plaintiff has also asserted claims that Defendants' denial of his requests for a halal diet violated his rights under RLUIPA.  This Court's previous rulings have narrowed Plaintiff's RLUIPA claims to those for injunctive and declaratory relief against Defendant Roark.  (Docs. 57, 73.)  "The standards under RLUIPA are different from those under the Free Exercise Clause." *Abdulhaseeb*, 600 F.3d at 1314.  In pertinent part, RLUIPA provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…even if the burden results from a rule of general applicability, unless the government demonstrates that imposition

21

of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

*Holt*, 135 S. Ct. at 860 (quoting 42 U.S.C. § 2000cc 1(a)).

> [A] religious exercise is substantially burdened under [RLUIPA] when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice – an illusory choice where the only realistically possible course of action entrenches on an adherent's sincerely held religious belief.

*Abdulhaseeb*, 600 F.3d at 1315.  "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion."  *Id.* at 1316.  "More than one court has held the lack of a halal diet to be a substantial burden on a Muslim's religious exercise."  *Id.* at 1317.

The Court recommends denial of Plaintiff's motion for summary judgment on his RLUIPA claims for essentially the same reasons it has recommended denial of summary judgment on his First Amendment claims.  An inmate asserting RLUIPA claims must as a threshold matter establish that "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief which exercise (3) is subject to a substantial burden imposed by the government."  *Id.* at 1312.  As discussed in Section IV.A.2., *supra*, Plaintiff has not demonstrated the absence of any genuine issues of material fact regarding whether Defendant Roark substantially burdened the exercise of his sincerely held religious beliefs by refusing to provide him with a diet conforming to those beliefs.  He is therefore not entitled to summary judgment on his RLUIPA claims.

Defendant Roark proffers two arguments in support of his motion for summary judgment on Plaintiff's RLUIPA claims.  First, Defendant Roark again argues that he did not substantially burden Plaintiff's religious exercise because Plaintiff received a diet conforming to his religious beliefs.  (Doc. 87 at 17.)   Second, Defendant argues that Plaintiff's RLUIPA claims for declaratory and injunctive relief are moot because Plaintiff is now receiving "a variety of vegetarian and protein alternatives (including tuna packets and peanut butter) and a halal certified entrée (served once per day) which includes halal certified meat."  (Doc. 92 at 4.)

In the present matter, the Court has already determined that there are genuine issues of material fact regarding whether Defendant Roark denied Plaintiff a halal diet conforming to his sincerely held religious beliefs, *i.e.* a halal diet including non-processed meats.  (*See* Section IV.A.3.a, *supra*.)   Defendant Roark's alleged "failure to provide a halal diet either prevents [Plaintiff's] religious exercise, or, at the least, places substantial pressure on [Plaintiff] not to engage in his religious exercise by presenting him with a Hobson's choice—either he eats a non-halal diet in violation of his sincerely held beliefs, or he does not eat."  *Abdulhaseeb*, 600 F.3d at 1317.  Viewing the evidence in the light most favorable to Plaintiff, a reasonable fact finder could determine that Defendant Roark substantially burdened Plaintiff's religious exercise in violation of RLUIPA.

Regarding Defendant Roark's argument that Plaintiff's RLUIPA claims are moot, "[w]e have held a case or controversy no longer exists when it is impossible to grant any effectual relief."  *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008).

> With respect to injunctive relief and the question of mootness, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects. The party requesting relief must demonstrate a good chance of being likewise injured in the future.  Likewise, with respect to declaratory relief, we look beyond the initial controversy which may have existed at one time and decide whether the

> facts alleged show that there is a substantial controversy of sufficient immediacy
> and reality to warrant the issuance of a declaratory judgment.  If an event occurs
> while a case is pending that heals the injury and only prospective relief has been
> sought, the case must be dismissed.

*Id.* (citations omitted).  However, "[o]ne exception to a claim of mootness is a defendant's voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time."  *Id.* at 892.  "[T]his exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct."  *Id.*

Defendant Roark's alleged provision to Plaintiff of a diet including halal-certified entrées, even if this diet in fact conforms to Plaintiff's religious beliefs, constitutes the voluntary cessation of an alleged illegal practice which Defendant Roark is free to resume at any time.  *Id.* Plaintiff's situation is distinguishable from that of the plaintiff in *AlAmiin v. Morton*, 528 F. App'x 838 (10th Cir. 2013), on which Defendant Roark relies. In that case, the Tenth Circuit found that

> the policy underlying the denial of [the plaintiff's] halal-meal requests has been
> amended, and *thanks to the injunction entered in his favor against other
> defendants in this litigation*, Mr. AlAmiin now has what he originally sought –
> L[awton Correctional Facility] will provide him with halal meals that are prepared
> and served according to kosher standards.  Given that the burden on Mr.
> AlAmiin's religious exercise has been lifted…there is nothing to be gained in the
> real world by continuing to litigate the halal-meal claim.

*Id.* at 842 (emphasis added).  In the present matter, in contrast, even if Plaintiff now has what he originally sought,[10] Defendant Roark could take it away again tomorrow, because unlike the defendant in *AlAmiin*, he is not bound by an "injunction entered in [Plaintiff's] favor against other defendants."  *Id.*  As such, Plaintiff's RLUIPA claims for declaratory and injunctive relief are not moot, and Defendant Roark's motion for summary judgment on these claims should be denied.

---

[10] In his unsworn response to Defendants' summary judgment motion, Plaintiff denies that he is currently receiving a halal diet conforming to his religious beliefs.  (Doc. 90 at 3, 10.)

## V. Conclusion

The Court recommends denial of Plaintiff's Motion for Summary Judgment on his First Amendment and RLUIPA claims because, viewing the evidence in the light most favorable to Defendants and drawing all reasonable inferences in their favor, Plaintiff has not shown the absence of any genuine issues of material fact regarding whether Defendants substantially burdened his sincerely held religious beliefs by denying him a halal diet conforming to those beliefs.  However, the Court also recommends denial of Defendants' Motion for Summary Judgment on Plaintiff's First Amendment claims because, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, there are genuine issues of material fact regarding whether Defendants personally participated in denying Plaintiff a halal diet conforming to his sincerely held religious beliefs, in violation of clearly established First Amendment law.  The Court also recommends denial of summary judgment to Defendant Roark on Plaintiff's RLUIPA claims for declaratory and injunctive relief, because there are genuine issues of material fact regarding whether Defendant Roark substantially burdened Plaintiff's sincerely held religious beliefs, and because these claims are not moot.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE