**FOR THE UNITED STATES DISTRICT COURT**
**IN THE DISTRICT OF NEW MEXICO**

MATTHEW WIGGINS,

      Plaintiff,

    v.                                     Civ. No. 11-967 KG/KK

DEANNA HOISINGTON *et al.*,

      Defendants.

**ORDER OVERRULING DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S**
**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**
**AND DENYING MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on review of the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") (Doc. 102), filed February 27, 2015, and Defendants' Objection[s] to Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 103), filed March 16, 2015.    Having considered Defendants' objections, the record evidence, and the applicable law, the Court finds that the objections are not well taken and will overrule them and adopt the Magistrate Judge's PFRD.

### I.  Introduction and Procedural History

This case arises out of Plaintiff's incarceration at the Western New Mexico Correctional Facility ("WNMCF") from March to November 2011.  (Docs. 1, 7, 10, 11.)  While the majority of Plaintiff's claims have been dismissed, two sets of claims remain:  (1) Plaintiff's First Amendment claims against Defendants Hoisington, Robinson, and Roark regarding Defendants' alleged refusal to provide Plaintiff with a halal diet while he was incarcerated at WNMCF; and, (2) Plaintiff's claims for declaratory and injunctive relief against Defendant Roark under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (Docs. 57, 59, 73, 74, 76.)

Since November 15, 2011, Plaintiff has been incarcerated at the Penitentiary of New Mexico ("PNM").  (Doc. 57 at 2.)

Plaintiff filed a motion for summary judgment on all of his remaining claims on July 25, 2014.  (Doc. 71.)  Likewise, in their *Martinez* report filed on October 20, 2014, Defendants incorporated a motion for summary judgment on all of Plaintiff's remaining claims.  (Doc. 87.)  On February 27, 2015, the Magistrate Judge assigned to this case entered a PFRD recommending denial of the parties' cross-motions for summary judgment.  (Doc. 102.)  Defendants filed objections to the Magistrate Judge's PFRD on March 16, 2015, in which they objected to the PFRD'S recommendation that their summary judgment motion be denied.  (Doc. 103.)  Plaintiff did not timely file objections to the Magistrate Judge's PFRD.  The parties' cross-motions for summary judgment and Defendants' objections are now before the Court.

## II. Analysis

When a party files timely written objections to a magistrate judge's recommendation, the district court must conduct a *de novo* review, and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C).  *De novo* review requires the district judge to consider relevant evidence in the record and not merely to review the magistrate judge's recommendation.  *In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995).  "[A] party's objections to the magistrate judge's [PFRD] must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Following a *de*

*novo* review of the evidence in the record, the Court finds that Defendants' objections are without merit, and will adopt the Magistrate Judge's PFRD in whole.

**A.      Defendants' Objection to PFRD Section IV.A.3.a.:   Did Defendants deny Plaintiff a diet conforming to his religious beliefs?**

Defendants first object to the Magistrate Judge's denial of their motion for summary judgment on Plaintiff's First Amendment claims, asserting that Plaintiff "has not met his burden of showing" that Defendants denied him a diet conforming to his sincerely held religious beliefs, specifically, a halal diet including non-processed meats.  (Doc. 103 at 1.)   "It is well-settled that inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  "Yet such protections are not without reasonable limitations . . . justified by the considerations underlying our penal system." *Id.*  Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004); *Beerheide v. Suthers*, 286 F.3d 1179, 1184 (10th Cir. 2002).  These principles have led to a two-step inquiry for analyzing a prisoner's free exercise claim.  *Kay*, 500 F.3d at 1218.  "First, the prisoner-plaintiff must . . . show that a prison regulation substantially burdened sincerely-held religious beliefs."  *Id.*  In this regard, the Tenth Circuit "recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs."  *Beerheide*, 286 F.3d at 1185.  "Second, prison officials may identify the legitimate penological interests that justified the impinging conduct."  *Kay*, 500 F.3d at 1218.

In the present matter, Defendants concede that they provided Plaintiff with a kosher diet rather than a halal diet, and do not challenge the Magistrate Judge's finding that genuine issues

of material fact exist regarding whether this diet included processed meats.  (*See generally id.*)
Defendants nevertheless deny that this diet substantially burdened Plaintiff's religious beliefs.
(Doc. 103 at 1-2); *Kay*, 500 F.3d at 1218.  Defendants make three arguments in support of this
assertion, specifically:  (1) that Plaintiff asked for a halal diet rather than a kosher diet, and did
not mention non-processed meats, in the grievance he submitted at WNMCF; (2) that Plaintiff
actually requested a kosher diet at PNM; and, (3) that when Plaintiff wrote to Defendant
Hoisington, he asked for bread and jelly, and did not ask for non-processed meats.  (*Id.* at 1-2.)

The Court notes that, on Defendants' summary judgment motion, Defendants, rather than
Plaintiff, bear the initial burden of showing the absence of a genuine issue of material fact.
*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex
Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Only after Defendants meet this burden must
Plaintiff "designate specific facts showing that there is a genuine issue for trial."  *See Celotex
Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v.
Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).  Moreover, the Court must draw all reasonable
inferences in Plaintiff's favor, and construe the evidence in the light most favorable to him.  *Hunt
v. Cromartie*, 526 U.S. 541, 550-55 (1999).  Finally, on summary judgment, Plaintiff's
complaints must be treated as affidavits to the extent that they allege specific facts based on his
personal knowledge and have been sworn under penalty of perjury.  *Hall v. Bellmon*, 935 F.2d
1106, 1110 (10th Cir. 1991).  Although "it is [not] the proper function of the district court to
assume the role of advocate for the *pro se* litigant . . . [a] pro se litigant's pleadings are to be
construed liberally and held to a less stringent standard than formal pleadings drafted by
lawyers."  *Id.*

In the present matter, the Court finds that genuine issues of material fact exist regarding whether Defendants' provision of a kosher diet that included processed meats to Plaintiff substantially burdened his sincerely held religious beliefs, notwithstanding Defendants' arguments to the contrary.  As noted above, Defendants first argue that Plaintiff asked for a halal diet rather than a kosher diet, but did not mention non-processed meats, in his April 24, 2011 grievance.[1]  (Doc. 103 at 2.)  In so arguing, Defendants fail to acknowledge two related and critical points.  First, as a legal matter, Plaintiff's sincerely held religious beliefs determine what is "halal."  *Holt v. Hobbs*, 135 S. Ct. 853, 862-63 (2015); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314 (10th Cir. 2010); *Kay*, 500 F.3d at 1220; *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991).  Second, as a factual matter, record evidence shows that Plaintiff wrote to Defendant Robinson on the same date he filed his grievance, *i.e.*, April 24, 2011, and explained what he believed to be "halal."  (Doc. 87-9 at 1-6.)  In this letter, Plaintiff informed Defendant Robinson that he had submitted a grievance about his halal diet, and expressed his belief that processed meats are not halal.  (*Id.* at 1, 2, 5.)  Thus, a rational fact finder could conclude that Plaintiff did grieve the presence of processed meat in his diet, by asking for a halal diet in his grievance, and simultaneously explaining to Defendant Robinson, albeit in a separate letter, that processed meats are not halal.

Defendants' argument that a kosher diet could not have substantially burdened Plaintiff's sincerely held religious beliefs at WNMCF, because Plaintiff subsequently requested a kosher diet at PNM, is also without merit.  In the PFRD, the Magistrate Judge noted "Plaintiff's various and potentially inconsistent dietary requests," including his requests for a kosher diet.  (Doc. 102 at 7 & n.2.)  The Magistrate Judge nevertheless found that, viewing the evidence in the light

---

[1] Specifically, on April 24, 2011, Plaintiff submitted an "Inmate Informal Complaint," which is the first step in the grievance process at NMDOC facilities.  (Doc. 87-8 at 8-18; Doc. 38-2 at 1.)

most favorable to Plaintiff and drawing all inferences in his favor, a reasonable fact finder could conclude that Plaintiff sincerely believes that a halal diet includes only non-processed meats, and that the kosher diet Defendants provided contained processed meats. (*Id.* at 10.)

The Court agrees with this finding, and specifically determines that Plaintiff's requests for a kosher diet do not necessarily indicate that Plaintiff believed a kosher diet to be an acceptable substitute for halal. Defendants are certainly free to make that argument at trial, but there is evidence that would allow a rational fact finder to conclude otherwise. For example, when Plaintiff wrote to Defendant Robinson that Islam forbids processed meats, he added that he would "continue to [receive] the [partial] kosher [until] this is [addressed] and corrected." (Doc. 87-9 at 1.) Similarly, in his September 10, 2014 inmate informal complaint, Plaintiff complained that he was receiving a "vegetarian . . . Budd[h]ist" diet, and asked PNM to "fix [his diet] to halal at the less kosher." (Doc. 90 at 20.) From this evidence, a reasonable fact finder could conclude that Plaintiff requested a kosher diet temporarily, as a diet less objectionable than the main menu or a vegetarian diet, but not as a halal diet conforming to his religious beliefs. Thus, Plaintiff's requests for a kosher diet do not demonstrate the absence of genuine issues of material fact regarding whether a kosher diet substantially burdened Plaintiff's sincerely held religious beliefs.

Finally, Defendants argue that their provision of a kosher diet to Plaintiff did not substantially burden his sincerely held religious beliefs because he requested bread and jelly, and did not mentioned non-processed meats, in his April 11, 2011 letter to Defendant Hoisington. (Doc. 103 at 2; Doc. 87-8 at 21.) This argument fails to acknowledge the record evidence that Defendant Hoisington received and responded to Plaintiff's informal complaint asking for a halal diet and not a kosher diet. (Doc. 87-8 at 8-18, 23.) It also fails to acknowledge Plaintiff's

6

uncontested testimony that he wrote to Defendant Hoisington "every step of the way about everything," which raises a genuine issue of material fact regarding whether Plaintiff copied her on, or otherwise informed her of, his written requests to Defendant Robinson.  (Doc. 1 at 10.) This would include his April 24, 2011 letter to Defendant Robinson, in which he expressed his belief that processed meats are not halal.  (Doc. 87-9 at 1-6.)  Plaintiff's letter to Defendant Hoisington requesting bread and jelly does not, as a matter of law, refute the previously discussed evidence that Defendants' refusal to provide Plaintiff with a halal diet including non-processed meats substantially burdened his sincerely held religious beliefs.  The Court will therefore overrule Defendants' objections regarding this issue, and adopt the Magistrate Judge's finding that genuine issues of material fact exist regarding whether Defendants denied Plaintiff a halal diet conforming to his sincerely held religious beliefs.

**B.      *Defendants' Objection to PFRD Section IV.A.3.b.:      Were Defendants' actions reasonably related to legitimate penological interests?***

Defendants next object to the Magistrate Judge's finding that they are not entitled to summary judgment because genuine issues of material fact exist regarding whether their refusal to provide Plaintiff with a halal diet was reasonably related to legitimate penological interests. (Doc. 103 at 3-6.)

> [T]o balance the guarantees of the Constitution with the legitimate concerns of prison administrators . . . a court [must] determine:  (1) whether a rational connection exists between the prison policy [or] regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and[,] (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide*, 286 F.3d at 1185; *Searles*, 393 F.3d at 1131; *Makin*, 183 F.3d at 1209.  The Court must balance all of these factors to determine whether an alleged burden on an inmate's

constitutional rights is reasonably related to legitimate penological interests, *Makin*, 183 F.3d at 1209; and, on summary judgment the Court must do so viewing the evidence and drawing all reasonable inferences in Plaintiff's favor.

### 1.     *Alternative means of exercising rights*

The Tenth Circuit has consistently found that an inmate who has been denied a diet conforming to his religious beliefs has no alternative means of exercising his First Amendment right to such a diet.  "It is one thing to curtail various ways of expressing belief, for which alternative ways of expressing belief may be found.  It is another thing to require a believer to defile himself, according to the believer's conscience, by doing something that is completely forbidden by the believer's religion."  *Beerheide*, 286 F.3d at 1192 (quoting *Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir. 1993)).  Defendants object to the Magistrate Judge's finding that genuine issues of material fact exist regarding whether they required Plaintiff to eat food forbidden by his sincerely held religious beliefs, *i.e.*, processed meats.  (Doc. 103 at 3-4.)  Defendants' arguments in support of this objection are identical to the arguments they make in support of their objection to Section IV.A.3.a. of the PFRD, *supra*.  (*Id.*)  The Court will overrule this objection for the reasons discussed above, and will adopt the Magistrate Judge's finding on this point.

### 2.     *Impact on personnel, prisoners, safety and security at WNMCF*

Defendants also object to the Magistrate Judge's finding that they failed to provide evidence that accommodating Plaintiff's sincerely held religious dietary beliefs would have had a negative impact on prison personnel, prisoners, safety, and security at WNMCF.  (Doc. 103 at 4.)  In support of this objection, Defendants point to two portions of the record, which they claim contain such evidence.  First, Defendants rely on Defendant Roark's August 29, 2011 denial of Plaintiff's grievance appeal, in which Defendant Roark stated that

> [t]he initial investigation indicates that the food service menu is approved by the New Mexico Corrections Department and the therapeutic registered dietician in accordance [with] religious dietary requirements.  Quality Assurance Monitors also check on a random basis to ensure that all standards are being met.

(Doc. 103 at 4 (citing Doc. 38-1 at 19).)  Defendants claim that this constitutes evidentiary support for their argument that "[i]t is simply unreasonable to accommodate the specific requests of one inmate because it would be impossible to ensure that each of his meals meets mandatory dietary requirements." (Doc. 103 at 4.)

However, Defendant Roark's explanation for denying Plaintiff's grievance appeal does not tend to prove Defendants' argument.  At most, it explains why the New Mexico Department of Correction's ("NMDOC") food service menu is likely to be nutritionally adequate and to meet unspecified "standards" and "Muslim requirements."  (Doc. 38-1 at 19.)  It does not even consider, much less attempt to describe, what would happen if Defendants deviated from the food service menu to accommodate Plaintiff's request for a halal diet including non-processed meats.  Even if the Court were to view the evidence in the light most favorable to *Defendants*, and draw all reasonable inferences in *Defendants'* favor, this would not constitute evidence of the impact accommodating Plaintiff's religious beliefs would have on WNMCF.  Viewed in the light most favorable to Plaintiff, *Hunt*, 526 U.S. at 550-55, Defendant Roark's denial of Plaintiff's grievance appeal does not even remotely constitute such evidence.

Defendants also rely on Defendant Roark's affidavit, submitted to the Court for the first time as Exhibit G[2] to Defendants' objections to the Magistrate Judge's PFRD, as evidence of the negative impact accommodating Plaintiff's sincerely held religious beliefs would have on WNMCF.  In his affidavit, Defendant Roark describes the process by which NMDOC, in December 2014, began providing a "religious/halal certified diet" to Muslim inmates who

---

[2] Exhibit G is the first and only exhibit attached to Defendants' objections.  (Doc. 103-1.)

requested it.  (Doc. 103-1 ¶¶ 5-7.)  This process included an unspecified number of meetings with unknown persons to determine whether such a diet would be provided, "several more meetings discussing possible vendors . . . and the cost," using unspecified means to "gather[] information" from the Muslim inmate population, and "developing a dietitian approved religious/halal menu." (Doc. 103-1 ¶ 5.)  The process culminated in Defendant Roark "personally approv[ing] the Alternate Menu/halal on October 9, 2014."  (*Id.*)  According to Defendant Roark, NMDOC is currently providing "halal" diets[3] to twenty-three inmates in NMDOC facilities.  (*Id.* ¶ 7.)

Again, however, Defendant Roark's explanation of the process by which a standard religious diet menu is developed does not tend to prove defense counsel's argument that, if Defendants had accommodated Plaintiff's religious dietary requests, "[i]t would [have been] impossible to ensure that each of [Plaintiff's] meals [met] mandatory dietary requirements." (Doc. 103 at 4.)  Like his denial of Plaintiff's grievance appeal, Defendant Roark's affidavit neither considers nor describes what would have happened if Defendants had deviated from the standard halal diet menu to accommodate Plaintiff's request for non-processed meats. In particular, Defendants have presented no testimony indicating that it would have been impossible or impracticable for them to make such an accommodation, or to ensure that Plaintiff's meals met mandatory dietary requirements if they did so.

In fact, there is record evidence suggesting the contrary.  NMDOC Policy CD-101401, entitled "Religious Diets; Procedures," states that inmates' religious diet requests are forwarded to "the Chaplain," who in turn forwards "approved requests" to Food Service to "provide an appropriate religious diet." (Doc. 87-4 at 5.)  However,

---

[3] This diet apparently consists of "a variety of vegetarian and protein alternatives (including tuna packets and peanut butter) and a halal certified entrée (served once per day) that includes halal certified meat."  (Doc. 92 at 4.)

> [i]f a determination is made that extraordinary accommodations may be necessary, the request will be forwarded for review by the Chaplain and the Food Service provider, who will jointly research the request and consult qualified faith group representatives in the community, as necessary, for assistance in designing an appropriate plan of action.

(*Id.*)  If it were in fact impossible or impracticable to make extraordinary accommodations to provide an inmate with a religious diet conforming to his sincerely held religious beliefs, then NMDOC's policy setting forth a procedure for making such accommodations would be pointless.

It is also informative that PNM did, for three days, provide Plaintiff with a diet that he claims conformed to his religious beliefs.  (Doc. 92-1 ¶ 8.)  Defendants urge the Court to ignore this evidence, at least as to Defendants Robinson and Hoisington, because PNM rather than WNMCF provided this diet, and only for a short period of time.  (Doc. 103 at 5.)  The Court agrees that Defendant Roark's ability to accommodate Plaintiff's religious dietary requests at PNM for three days is not conclusive evidence that the WNMCF Defendants could also have accommodated those requests for months.  Nevertheless, a reasonable fact finder could infer that if one NMDOC facility was able to accommodate Plaintiff's religious dietary beliefs for three days, then another NMDOC facility could do so for a longer period of time.  Moreover, Defendants have not yet presented any evidence explaining why it was only possible to accommodate Plaintiff's dietary beliefs at PNM for three days, but nowhere else and for no longer.

Defendants' counsel also argues that

> it is not unreasonable to believe that other inmates would find that [NMDOC] was treating Plaintiff with favoritism by providing him [with] a 'personalized' meal . . . .  A perception of favoritism to Plaintiff would likely cause discord amongst the inmate population, which in turn[] could create a security risk to both inmates and staff.

11

(Doc. 103 at 5.)  The Court agrees that this argument is "not unreasonable," (*id.*); however, it is a legal truism that counsel's arguments, however reasonable, are not evidence.  *United States v. Vann*, 776 F.3d 746, 760 (10th Cir. 2015); *Harris v. Dinwiddie*, 642 F.3d 902, 905 n.5 (10th Cir. 2011).  As the Magistrate Judge stated in the PFRD,

> [t]he Court does not mean to indicate that Defendants' arguments are inherently unsound, or that Defendants would be unable to support them with credible evidence at trial.  Rather, the Court simply notes that Defendants have offered no such evidence at this stage of the proceedings, and that some "evidence, however minimal" would be necessary to find that this factor weighs in their favor as a matter of law.

(Doc. 102 at 13 n.7 (citing *Beerheide*, 286 F.3d at 1191).)  The Court will therefore overrule Defendants' objection to the Magistrate Judge's finding that Defendants have not yet presented any cognizable evidence regarding "what effect accommodating the exercise of the [Plaintiff's] right would have on guards, other prisoners, and prison resources generally."  *Beerheide*, 286 F.3d at 1189.

### 3.    *Ready, easy-to-implement alternatives to accommodate right*

Defendants' next objection to the Magistrate Judge's PFRD concerns whether ready, easy-to-implement alternatives exist to accommodate Plaintiff's religious dietary beliefs.  (Doc. 103 at 5-6.)  Defendants offer three arguments in connection with this objection.  Defendants first argue that they did in fact implement an acceptable alternative, specifically, a kosher diet.[4] (*Id.* at 5.)  According to Defendants, this diet was an acceptable alternative because it was "based on the recommendations of the Islamic Center of New Mexico, who[m] Defendants regarded as the expert concerning the religious diet[ary] requirements of Muslim practitioners."  (*Id.*) However, this argument relies on the faulty premise that Defendants' beliefs, or the beliefs of an

---

[4] In so arguing, Defendants appear to misunderstand the nature of this factor, the presence of which generally weighs in the plaintiff's, rather than the defendant's, favor.  *See Beerheide*, 286 F.3d at 1191 ("[T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns.").

outside religious authority such as the Islamic Center of New Mexico, determine what is "halal," when in fact Plaintiff's sincerely held religious beliefs do so. *Holt*, 135 S. Ct. at 862-63; *Abdulhaseeb*, 600 F.3d at 1314; *Kay*, 500 F.3d at 1220; *LaFevers*, 936 F.2d at 1119.

Second, Defendants assert that the Magistrate Judge "held that a diet of non-processed meats is an easy[-]to[-]implement accommodation of Plaintiff's religious rights" because Plaintiff received such a diet for three days at PNM. (Doc. 103 at 6.) Initially, this argument misstates the Magistrate Judge's finding. In fact, the Magistrate Judge found that, "viewed in the light most favorable to Plaintiff, there are genuine issues of material fact regarding . . . whether there was a ready, easy-to-implement alternative available to accommodate [Plaintiff's religious] beliefs." (Doc. 102 at 14.) For the reasons discussed in Section II.B.2., *supra*, the Court agrees with this finding. A reasonable fact finder could infer the existence of a ready, easy-to-implement alternative to accommodate Plaintiff's religious dietary beliefs from the evidence that PNM accommodated those beliefs for three days. Again, this evidence is not conclusive, due to the different location, food provider, and duration; however, it is sufficient to create a genuine issue of material fact at this stage of the proceedings.

Finally, Defendants argue that

making changes to the inmates' meal plan is not "easy-to-implement." There are multiple factors that must be taken into consideration such as securing vendors, cost and budget, information gathering on the needs of inmates and ensuring the meals are nutritionally balanced and approved by a certified dietician.

(Doc. 103 at 6.) Defendants rely on Defendant Roark's affidavit to support this proposition. (*Id.*) Defendant Roark's affidavit does provide evidentiary support for the proposition that making a change to the standard diet for all Muslim inmates in NMDOC's custody who have requested a halal diet involves a decision-making process with multiple factors, including vendors, cost, budget, information gathering, and nutritional adequacy. (Doc. 103-1 ¶ 5.) It does

not, however, address whether and to what extent this process applies to making "extraordinary accommodations" for a particular inmate pursuant to Policy CD-101401, and how difficult this might be.  It thus fails to eliminate genuine issues of material fact on this point.  (*See generally id.*)  The Court will therefore overrule Defendants' objection and adopt the Magistrate Judge's finding of genuine issues of material fact regarding whether ready, easy-to-implement alternatives exist to accommodate Plaintiff's religious dietary beliefs.

**C.     *Defendants' Objection to PFRD Section IV.A.3.c.:   Did each Defendant personally participate in the alleged constitutional violation?***

Defendants next object to the Magistrate Judge's finding that genuine issues of material fact exist regarding whether each Defendant personally participated in the alleged violation of Plaintiff's First Amendment rights, *i.e.*, the denial of a halal diet conforming to his sincerely held religious beliefs.  (Doc. 103 at 7.)  Defendants concede that "there is evidence that Defendant Roark . . . made policy decisions regarding what religious diets, if any, inmates at NMDOC facilities . . . received."[5]  (*Id.*)  However, they assert that Defendants Hoisington and Robinson could not have personally participated in the alleged violation of Plaintiff's constitutional rights because they "were at all times acting within the scope of their duties, in good faith and under the directives of Defendant Roark in providing Plaintiff a kosher diet as an alternative to a halal diet."  (*Id.*)  In other words, Defendants Hoisington and Robinson claim that they were merely following Defendant Roark's orders to provide kosher diets to Muslim inmates who requested a halal diet when they provided such a diet to Plaintiff.

Defendants' argument appears to be based on a defense associated with qualified immunity.  "Usually, if the law is clearly established at the time of defendant's conduct, a

---

[5] This concession is a significant change from Defendants' position in their summary judgment motion, in which they argued that Defendant Roark's "only direct action . . . regarding Plaintiff's claim of denial of religious diet was his review and denial of [Plaintiff's grievance]."  (Doc. 87 at 19.)

qualified immunity defense will fail.  Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained."  *Roska ex rel. Roska v. Sneddon*, 437 F.3d 964, 971 (10th Cir. 2006) (citations omitted).  "Exceptional circumstances which may render an official's conduct objectively reasonable and therefore justify qualified immunity" include reliance on a state statute, regulation, advice of counsel, or official policy.  *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 842 (10th Cir. 2005); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251-52 (10th Cir. 2003).  Such reliance "does not render the conduct *per se* reasonable," but rather "is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional."  *Peterson*, 328 F.3d at 1252.  "It is the defendant's burden to claim such extraordinary circumstances and prove that his conduct was objectively reasonable."  *Mimics, Inc.*, 394 F.3d at 842.

The Court finds that Defendants Robinson and Hoisington have not, in this instance, met their burden of showing the absence of any genuine issues of material fact regarding whether they followed NMDOC's official policies in refusing to accommodate Plaintiff's religious dietary requests.  As noted above, Policy CD-101401 required Defendant Robinson to forward approved requests for religious diets to the food service provider, who was to provide "an appropriate religious diet."  (Doc. 87-4 at 5.)  However, if Defendant Hoisington or Defendant Robinson determined that "extraordinary accommodations may be necessary," then Plaintiff's request was to be forwarded to Defendant Robinson and the food service provider to research and design "an appropriate plan of action."  (*Id.*)

The Court will accept as true, for purposes of this argument, that Defendant Roark established an official policy that the standard kosher diet was "an appropriate religious diet" for

15

Muslim inmates requesting a halal diet.  (*Id.*; Doc. 103 at 7.)  However, Plaintiff has presented evidence demonstrating a genuine issue of material fact regarding whether Defendants Robinson and Hoisington knew that his religious diet request may have necessitated extraordinary accommodations.  (Doc. 87-9 at 1-6.)  If so, Policy CD-101401 required Defendant Hoisington to forward his request to Defendant Robinson and the food service provider to design an appropriate plan of action.  (Doc. 87-4 at 5.)  In short, NMDOC's religious dietary policy gave Defendants Hoisington and Robinson the authority and responsibility to deviate as needed from Defendant Roark's general policy regarding the "appropriate religious diet" for Muslim inmates. Thus, there is no evidence that Defendant Roark's general policy either permitted or required Defendants Hoisington and Robinson to participate in the alleged violation of Plaintiff's constitutional rights by denying him a halal diet conforming to his religious beliefs.  Indeed, there is evidence in the record suggesting that Defendants Hoisington and Robinson failed to follow Policy CD-101401 and that this failure directly contributed to the alleged violation of Plaintiff's First Amendment rights.

Defendant Hoisington contends that she did not violate Policy CD-101401, because Plaintiff only asked her for bread, jelly, and a halal diet rather than a kosher diet.  (Doc. 103 at 7-8.)  Defendants argue that "'halal' implicates that an animal has been slaughtered and prayed upon in a certain manner," relying on a letter written by Abdul Rauf Campos-Marquetti, Prison Program Coordinator for the Islamic Center of New Mexico.  (*Id.* (citing Doc. 87-8 at 22).)  This argument combines two previous arguments that the Court has already rejected.  First, again, how an outside religious authority defines "halal" is not determinative; rather, Plaintiff's sincerely held religious beliefs define what is "halal."  *Holt*, 135 S. Ct. at 862-63; *Abdulhaseeb*, 600 F.3d at 1314; *Kay*, 500 F.3d at 1220; *LaFevers*, 936 F.2d at 1119.  As discussed in Section

16

II.A., *supra*, as well as in the Magistrate Judge's PFRD, there is record evidence that, to Plaintiff, "halal" included non-processed meats.  (Doc. 102 at 9-11.)  Then, as also discussed above in Section II.A., a reasonable fact finder could conclude that Defendant Hoisington received Plaintiff's requests for a halal diet including non-processed meats.  (*See* Doc. 87-8 at 8-18, 23; Doc. 1 at 10.)  Thus, there are genuine issues of material fact regarding whether Defendant Hoisington should have determined that extraordinary accommodations may have been necessary to provide Plaintiff with a "halal" diet, and should have forwarded Plaintiff's request to Defendant Robinson and the food service provider to design an appropriate plan of action in accordance with Policy CD-101401.  The Court will therefore overrule Defendants' objection that Defendants Hoisington and Robinson did not personally participate in the alleged violation of Plaintiff's constitutional rights, and will adopt the Magistrate Judge's finding of genuine issues of material fact on this issue.

**D.**    ***Defendants' Objection to PFRD Section IV.A.3.e.:   Are Plaintiff's allegations sufficiently specific to raise a right to relief above the speculative level?***

In this section of Defendants' objections, Defendants again reiterate arguments that the Court has previously rejected, specifically:  (1) that Plaintiff's First Amendment claims should fail because his April 24, 2011 grievance requested a halal diet rather than a kosher diet, and did not mention non-processed meats; and, (2) that Plaintiff requested a kosher diet at PNM.  (Doc. 103 at 8.)  The Court rejects these arguments for the reasons set forth in Section II.A., *supra*.  For all of the above reasons, the Court will overrule Defendants' objections to the Magistrate Judge's denial of their motion for summary judgment on Plaintiff's First Amendment claims, and will adopt the Magistrate Judge's PFRD as to these claims.

**E.**      ***Defendants' Objection to PFRD Section IV.B.:  Plaintiff's RLUIPA Claims***

Finally, Defendants object to the Magistrate Judge's finding that Plaintiff's RLUIPA

claims for declaratory and injunctive relief are not moot.  (Doc. 103 at 8-9.)  Defendants tacitly

acknowledge that "[o]ne exception to a claim of mootness is a defendant's voluntary cessation of

an alleged illegal practice which the defendant is free to resume at any time." *Chihuahuan*

*Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008).   In the PFRD, the

Magistrate Judge held that this exception applied to Plaintiff's RLUIPA claims, because even if

Defendant Roark has in fact voluntarily begun to provide Plaintiff with a halal diet conforming

to his sincerely held religious beliefs, he could resume his denial of such a diet at any time.

(Doc. 102 at 24.)  In their objections, Defendants argue that the Magistrate Judge's "finding that

Defendant Roark will take the halal meal away at any time is purely speculative."  (Doc. 103 at

9.)

The legal error in Defendants' argument is clear:  the issue is not whether Defendant

Roark *will* remove Plaintiff's halal meal, but whether he *can*.  *Chihuahuan Grasslands Alliance*,

545 F.3d at 892.  Factually, in turn, Defendant Roark's affidavit actually confirms that he has the

ability to take away Plaintiff's halal meals at any time by changing NMDOC's halal meal policy.

(Doc. 103-1 ¶¶ 5-6.)  Indeed, the affidavit even suggests some reasons why he might do so, for

example, if NMDOC's approved vendors change, if budgetary or cost considerations change, or

if the nature and needs of the Muslim inmate population change.  (*Id.*)   The Court notes that

Plaintiff has apparently been subject to three distinct policies regarding halal diets[6] since this

lawsuit began, which certainly suggests that these factors have changed with some frequency in

---

[6] The three policies in question are:  (1) to provide Muslim inmates requesting a halal diet with a kosher diet (Doc. 103 at 7); (2) to provide Muslim and Jewish inmates requesting religious diets with meals from the main menu (Doc. 102 at 16); and, (3) to provide Muslim inmates requesting halal diets with a diet including halal certified entrées. (Doc. 102 at 23; Doc. 103-1 ¶¶ 5-7.)

the past.  It also renders the Magistrate Judge's concern that Defendant Roark might change the policy again considerably more than speculative.  Finally, Defendants' assertion that Plaintiff can always file another lawsuit should he have "future complaints about his religious diet" disregards the fact that Plaintiff has already been waiting over three years for his claims in *this* lawsuit to be adjudicated.  (Doc. 103 at 9.)  The interests of both justice and judicial efficiency require that these claims be heard on their merits without further delay.  The Court will therefore overrule Defendants' objections to the Magistrate Judge's finding that Plaintiff's RLUIPA claims are not moot, and will adopt the Magistrate Judge's PFRD as to these claims.

### III.  Conclusion

The Court will overrule Defendants' objections to the Magistrate Judge's denial of Defendants' motion for summary judgment on Plaintiff's First Amendment claims, and will adopt the Magistrate Judge's PFRD as to these claims, because there are genuine issues of material fact regarding whether Defendants denied Plaintiff a halal diet conforming to his sincerely held religious beliefs in violation of the First Amendment.  The Court will also overrule Defendants' objections to the Magistrate Judge's denial of Defendants' motion for summary judgment on Plaintiff's RLUIPA claims, and will adopt the Magistrate Judge's PFRD as to these claims, because there are genuine issues of material fact regarding whether Defendant Roark's recent provision of a halal diet to Plaintiff constitutes the voluntary cessation of an alleged illegal practice which Defendant Roark is free to resume at any time.

IT IS THEREFORE ORDERED that:

1.      Defendants' Objection[s] to Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 103) are OVERRULED;

2.      The Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 102) is ADOPTED;

3.      Plaintiff's Motion for Summary Judgment (Doc. 71) is DENIED; and,

4.      Defendants' Motion for Summary Judgment (Doc. 87) is DENIED.

IT IS SO ORDERED.

_____

UNITED STATES DISTRICT JUDGE